J-S25036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ROBERT LELLOCK | : | |
| Appellant | : | No. 657 WDA 2021 |

Appeal from the PCRA Order Entered May 7, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013778-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ROBERT LELLOCK | : | |
| Appellant | : | No. 659 WDA 2021 |

Appeal from the PCRA Order Entered May 7, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003936-2013

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: NOVEMBER 14, 2022**

Appellant, Robert Lellock, appeals from the order entered in the Allegheny County Court of Common Pleas, which dismissed in part his petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Appellant worked as a school police officer in Pittsburgh. During the course of his employment, he sexually abused multiple boys. The PCRA court opinion set forth the remaining procedural history of this appeal as follows:

On July 29, 2013, a jury found [Appellant] guilty [of involuntary deviate sexual intercourse ("IDSI") and multiple counts of endangering the welfare of a child ("EWOC"), corruption of minors, and indecent assault at two different docket numbers]. The [court] sentenced Appellant to an aggregate term of incarceration of 32-64 years and found him to be a sexually violent predator. Judgment of sentence was affirmed on appeal, but the Superior Court of Pennsylvania remanded the case for resentencing, finding that the imposition of a mandatory sentence was illegal. [The trial court] resentenced [Appellant] to the same sentence, without the mandatory sentence, on July 21, 2016. This sentence was affirmed on August 16, 2017.

In 2017, appointed counsel filed an amended PCRA petition and in 2018 the Commonwealth conceded a sentencing issue on two counts of [EWOC]. On January 2[8], 2019, just before retiring, [the trial jurist] granted a resentencing hearing on the EWOC [convictions] and denied the rest of the PCRA. The case was reassigned to [the current jurist].

Next, counsel for Appellant filed a motion to reconsider, and Appellant filed a *pro se* motion for a **Grazier**[2] hearing. [The PCRA court] granted both motions and ordered Appellant to refile a PCRA [petition] and raise all issues therein. Appellant complied and the Commonwealth answered. [The PCRA court] reviewed the record, issued a notice of intent to dismiss the non-sentencing related issues, and scheduled a resentence[ing] hearing. Appellant filed motions to amend and to stay, which [the PCRA court] granted. On [August 26], 2020, Appellant filed an amended PCRA [petition]. The Commonwealth responded that claims of ineffective assistance of counsel at claims 1-8 and 10-12 were without merit, and claim 13 of cumulative prejudice was also meritless. Claim 9 is a time credit issue wherein

_____

2 **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998).

the Commonwealth believes [Appellant] is entitled to three additional days. Appellant had been given credit from 9/12/12-12/18/12, but had not been released from custody until 12/21/12.

[On May 4, 2021, the court resentenced Appellant on some of the counts pursuant to the original trial jurist's 2019 order.] On May 7, 2021, [the PCRA court] dismissed claims 1-8 and 10-13 [and] granted the three-day time credit….

(PCRA Court Opinion, filed 7/28/21, at 2-3) (some capitalization omitted).

On June 1, 2021, Appellant timely filed a *pro se* notice of appeal from the order denying PCRA relief.[3] Appellant voluntarily filed a *pro se* Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on June 28, 2021.

Appellant now raises seven issues for our review:

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that trial counsel gave ineffective assistance of counsel when he failed to fully develop and argue that the amendments that extended the criminal statute of limitations were illegal and the holding that allowed them [was] erroneously decided.

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that trial counsel and appellate [counsel] gave ineffective assistance of counsel when they failed to properly raise, argue, and brief that the prosecution on twelve of the counts that Appellant was facing at trial [was] time-barred by the criminal statute of

_____

[3] More specifically, Appellant filed separate *pro se* notices of appeal at each underlying docket number from the order denying PCRA relief. Appellant also filed separate *pro se* notices of appeal at each underlying docket number from the new judgment of sentence imposed following the resentencing hearing. This Court docketed the appeals related to the resentencing hearing at 658 and 660 WDA 2021. This Court subsequently consolidated each set of appeals *sua sponte*.

- 3 -

limitations.

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that trial counsel gave ineffective assistance of counsel when he failed to raise, argue, and brief this claim of pre-arrest delay.

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that trial counsel gave ineffective assistance of counsel when he failed to properly object, raise, argue, and litigate that several jury instructions were legally deficient when charged to the jury.

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that trial counsel and appellate counsel #2 gave ineffective assistance of counsel when they failed to properly object, raise, argue, litigate, and brief that Appellant was illegally labeled as a sexually violent predator.

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that appellate counsel #3 gave ineffective assistance of counsel when she failed to raise that Appellant being sentenced under [the Sex Offender Registration and Notification Act ("SORNA")] was illegal and that SORNA II cannot apply to Appellant's case.

The PCRA court abused its discretion when it dismissed without a hearing on Appellant's claim that all [counsel] gave ineffective assistance of counsel throughout all phases of Appellant's case.

(Appellant's Brief at 4-5).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Beatty*, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*."

*Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

Appellant's first two issues are related, and we address them together. Appellant argues that a two-year statute of limitations applied for twelve of the offenses at issue, the statute of limitations had expired by the time that the Commonwealth brought the charges, and that the trial court should have dismissed the relevant counts. Appellant acknowledges that trial counsel raised the statute of limitations issue in a pretrial motion. Appellant insists, however, that the pretrial motion was inadequate. Additionally, Appellant notes that our legislature amended the relevant statutes of limitations after Appellant's offenses but before the Commonwealth brought the charges. Appellant asserts that the amended version of the statutes should not have applied to his case.

Appellant acknowledges *Commonwealth v. Johnson*, 520 Pa. 165, 553 A.2d 897 (1989) and *Commonwealth v. Harvey*, 542 A.2d 1027 (Pa.Super. 1988), holding that when a new limitations period is enacted and the prior period has not yet expired, the longer statute will apply to an action. Nevertheless, Appellant maintains these cases were erroneously decided and "his argument proves that his Fourteenth Amendment and Article 1, Section 9 constitutional rights were violated by the government's arbitrary actions against him and others like him." (Appellant's Brief at 19). Appellant concludes trial counsel was ineffective for filing an inadequate pretrial motion

and failing to challenge the amendment of the statute of limitations. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing

to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting ***Pierce, supra*** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Regarding the effect of amendments on statutes of limitations, Pennsylvania law states:

### § 1975.  Effect of repeal on limitations

Whenever a limitation or period of time, prescribed in any statute for acquiring a right or barring a remedy, or for any other purpose, has begun to run before a statute repealing such statute takes effect, and the same or any other limitation is prescribed in any other statute passed by the same General Assembly, the time which has already run shall be deemed part of the time prescribed as such limitation in such statute passed by the General Assembly.

1 Pa.C.S.A. § 1975.

In interpreting this statute, this Court noted that, "when a new period of limitations is enacted, and the prior period of limitations has not yet expired, in the absence of language in the statute to the contrary, the period of time accruing under the prior statute of limitations shall be applied to calculation of the new period of limitations." *Harvey, supra* at 1029-30.  Our Supreme Court has also explained that "[t]here is nothing retroactive about the application of an extension of a statute of limitations, so long as the original statutory period has not yet expired." *Johnson, supra* at 170, 553 A.2d at 900 (internal citation and quotation marks omitted).

Instantly, trial counsel raised the statute of limitations issue in omnibus pretrial motions.  At docket No. 3936 of 2012, trial counsel argued that three of the criminal counts expired in 2008 and four counts expired in 2011.  (*See*

Omnibus Pretrial Motion, filed 5/1/13, at ¶¶15, 18, 23).  At docket No. 13778 of 2012, trial counsel argued that six of the criminal counts expired in 2008 and ten counts expired in 2011.  (**See** Omnibus Pretrial Motion, filed 1/3/13, at ¶¶15, 18, 23).  The court evaluated the pretrial motions and denied relief.  On direct appeal, this Court also considered Appellant's statute of limitations claims and determined that the Commonwealth timely filed the charges.  **See Commonwealth v. Lellock**, No. 2021 WDA 2013, unpublished memorandum at 4, n. 2 (Pa.Super. filed Apr. 23, 2015).

Considering this procedural history, the PCRA court found that Appellant could not satisfy the arguable merit prong of the test for ineffectiveness because trial counsel raised the issue in a pretrial motion, argued it at a hearing, and the trial court did not grant relief.  (**See** PCRA Court Opinion at 5).  We discern no legal error in the PCRA court's conclusion, and we reiterate that it would be improper to relitigate this issue in hindsight where the record supports the conclusion that trial counsel adequately raised a statute of limitations defense.  **See Beatty, supra**; **King, supra**.  Moreover, Appellant offers no relevant authority to support his own self-serving conclusion that **Harvey** and **Johnson** were erroneously decided.  In light of this relevant case law, the amendment of the statutes of limitations at issue did not prevent the Commonwealth from bringing the charges in this case.  Based upon the foregoing, Appellant is not entitled to relief on his first two claims.

In his third issue, Appellant argues that there was an impermissible

period of pre-arrest delay after the commission of the offenses. Appellant claims that the pre-arrest delay left him unable to obtain critical evidence that would have helped him to establish an alibi. Although the PCRA court determined that this claim lacked arguable merit, Appellant maintains that the PCRA court improperly relied on a plurality decision of the Pennsylvania Supreme Court. To the extent that the court also found that the pre-arrest delay was due to delayed reporting by the victims, Appellant contends that the record does not support this finding. Appellant concludes that trial counsel was ineffective for failing to challenge the pre-arrest delay. We disagree.

"The constitutional right to due process … protects defendants from having to defend stale charges, and criminal charges should be dismissed if improper pre-arrest delay causes prejudice to the defendant's right to a fair trial." **Commonwealth v. Snyder**, 552 Pa. 44, 51-52, 713 A.2d 596, 599-600 (1998). In **Snyder**, our Supreme Court determined that "our due process inquiry must consider the reasons for the delay and whether it resulted in actual prejudice to the accused." **Id.** at 60, 713 A.2d at 604. The Court also noted:

> This Court recognizes that murder prosecutions often come to fruition after many years of investigation. We do not intend to limit the power of the Commonwealth to prosecute a murderer if and when an investigation yields new evidence after many years of inactivity. However, if no additional evidence appears, the delay results in actual prejudice to the defendant, and there are no proper reasons for postponing the defendant's arrest, the due process clauses of the Constitutions of the United States and Pennsylvania require that the charges be dismissed.

- 10 -

*Id.* at 62, 713 A.2d at 605.

The Court later attempted to elaborate on this standard in a plurality opinion.[4] *See Commonwealth v. Scher*, 569 Pa. 284, 803 A.2d 1204 (2002) (plurality). In *Scher*, the lead opinion stated:

> "[T]he defendant must first show that the delay caused him actual prejudice, that is, substantially impaired his or her ability to defend against the charges. The court must then examine all of the circumstances to determine the validity of the Commonwealth's reasons for the delay. **Only in situations where the evidence shows that the delay was the product of intentional, bad faith, or reckless conduct by the prosecution, however, will we find a violation of due process."**

*Id.* at 313, 803 A.2d at 1221 (emphasis added) (internal footnote omitted). Nevertheless, the concurring opinions presented divergent views on the standard applicable to the Commonwealth's actions.

This Court subsequently evaluated the divergent views set forth in *Scher*. *See Commonwealth v. Wright*, 865 A.2d 894, 900-01 (Pa.Super. 2004). Consequently, we utilized the standard set forth in *Snyder, supra*, which established that a pre-arrest delay constitutes a due process violation "where there has occurred 'actual prejudice to the defendant' and there

---

[4] "In cases where a concurring opinion enumerates the portions of the plurality's opinion in which the author joins or disagrees, those portions of the agreement gain precedential value." *Commonwealth v. Brown*, 23 A.3d 544, 556 (Pa.Super. 2011). "Where, … however, the concurrence does not explicitly state its agreement or disagreement with the plurality, we must look to the substance of the concurrence to determine the extent to which it provides precedential value to points of agreement." *Id.*

- 11 -

existed 'no proper reasons for postponing the defendant's arrest.'" **Wright, supra** at 901 (quoting **Snyder, supra** at 62, 713 A.2d at 605).

Instantly, Appellant's PCRA petition included an exhibit to demonstrate that the Commonwealth could have brought its charges against Appellant sooner. Specifically, Appellant submitted a supplemental police report from the City of Pittsburgh Bureau of Police, dated August 28, 2012. (**See** Amended PCRA Petition, filed 8/26/20, at Ex. C-11).[5] The report stated that law enforcement received an email from a counselor at a youth development center, which indicated that one victim, S.L., made a disclosure about Appellant's sexual abuse in 2005. The supplemental police report quoted a portion of the youth counselor's intake report summarizing the victim's disclosure. The report also stated that the counselor contacted the state police in 2005, and a trooper subsequently took a statement from the victim.

Here, the supplemental report does not provide any information about the victim's statement to the trooper, and it does not indicate whether the trooper ever contacted Pittsburgh police about the disclosure. The supplemental report also fails to mention the other victims at issue in this case and the respective dates of their disclosures. On this record, we cannot accept Appellant's conclusion that the Commonwealth lacked any proper reason for the pre-arrest delay. Instead, we note that the PCRA court properly evaluated

_____

[5] Although the report stated that it is four pages long, Appellant included only one page with his petition.

- 12 -

the record and determined that the victims' delay in pursuing their disclosures excused the pre-arrest delay. **See Snyder, supra**; **Wright, supra**. This analysis is free of legal error, and it supports the court's determination that Appellant's claim lacked arguable merit. **See Beatty, supra**. Therefore, Appellant is not entitled to relief on his third claim.

In his fourth issue, Appellant raises various challenges to the trial court's jury instructions. Specifically, Appellant questions the accuracy of the instructions regarding: 1) reasonable doubt; 2) evaluation of a defendant's character; 3) proof of date of the crimes; and 4) impeachment of witnesses with prior convictions. Appellant complains that the court provided legally deficient jury instructions that did not adequately present the law to the jury.

With respect to the reasonable doubt instruction, Appellant asserts that the court incorrectly stated, "[t]o summarize, you find the defendant guilty on mere suspicion." (Appellant's Brief at 31). Appellant indicates that the court should have stated, "you may not find the defendant guilty on mere suspicion." (**Id.**) For these reasons, Appellant maintains that the court provided the jury with the incorrect standard of proof.

For the jury instruction regarding evaluation of a defendant's character, Appellant asserts that the court failed to provide the correct standard of proof and omitted an unspecified portion of the jury instruction. Appellant also believes that the instruction should have stated that Appellant is a nonviolent individual. For the date of crime instruction, Appellant again asserts that the

court failed to provide the correct standard of proof. Regarding the instruction on the impeachment of a witness with a prior conviction, Appellant claims that the jury did not have information regarding which witnesses had prior convictions, when the convictions occurred, and the offenses at issue.

Appellant maintains that trial counsel had no reasonable basis for failing to object to these instructions. Appellant also argues that counsel's inaction caused him to suffer prejudice because he was "convicted on all counts and the record does not show that [the convictions were] beyond a reasonable doubt as required by the constitution." (**Id.** at 34). Based upon the foregoing, Appellant concludes that trial counsel was ineffective for failing to object to the jury instructions at issue. We disagree.

This Court has set forth the relevant standard for jury instructions as follows:

> A trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

**Geathers, supra** at 733 (quoting **Commonwealth v. Ragan**, 560 Pa. 106, 743 A.2d 390, 397-98 (1999)). **See also Commonwealth v. Lesko**, 609 Pa. 128, 216, 15 A.3d 345, 397 (2008) (reiterating that charge, "as a whole,"

must be considered; court has broad discretion in phrasing instructions, so long as directions given "clearly, adequately, and accurately" reflect law).

Regarding reasonable doubt, Pennsylvania's Suggested Standard Criminal Jury Instructions provide as follows:

A fundamental principle of our system of criminal law is that the defendant is presumed to be innocent. The mere fact that [he] [she] was arrested and is accused of a crime is not any evidence against [him] [her]. Furthermore, the defendant is presumed innocent throughout the trial and unless and until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth has proven [him] [her] guilty beyond a reasonable doubt.

It is not the defendant's burden to prove that [he] [she] is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the defendant is guilty of that crime beyond a reasonable doubt. The person accused of a crime is not required to present evidence or prove anything in his or her own defense [except with respect to the defense of *[type of defense]*, which I will discuss later]. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty.

Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt and to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime. A reasonable doubt must be a real doubt; it may not be an imagined one, nor may it be a doubt

> manufactured to avoid carrying out an unpleasant duty.
>
> So, to summarize, you may not find the defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, then the defendant is no longer presumed innocent and you should find [him] [her] guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find [him] [her] not guilty.

Pa.SSJI (Crim) 7.01 (internal numbering omitted).

In **Commonwealth v. Reid**, ___ Pa. ___, 259 A.3d 395 (2021), our Supreme Court addressed a similar issue regarding a reasonable doubt instruction. Specifically, the appellant complained that the trial court inaccurately informed the jury that "the Commonwealth is not bound to prove the case beyond a reasonable doubt, a shadow of a doubt or to a mathematical certainty." **Id.** at ___, 259 A.3d at 430. The Court subsequently evaluated the reasonable doubt instruction in its entirety and concluded that the trial court provided an accurate description of the law prior to the complained-of statement. The remainder of the instruction "included multiple references to the Commonwealth's duty to prove [the a]ppellant guilty beyond a reasonable doubt." **Id.** at 434.

"[O]ther than the [trial] court's passing and obviously inadvertent, misstatement regarding the Commonwealth's burden of proof, the court clearly, adequately, and accurately instructed the jury regarding the Commonwealth's duty to prove Appellant guilty beyond a reasonable doubt." **Id.** Thus, the Supreme Court held "that the trial court's instruction did not

- 16 -

lessen the Commonwealth's burden of proof below the standard of beyond a reasonable doubt," and "the PCRA court did not err in finding a lack of arguable merit in [the a]ppellant's claim that trial counsel were ineffective for failing to object to the trial court's jury instruction[.]" ***Id. Compare Commonwealth v. Montalvo***, ___ Pa. ___, 244 A.3d 359 (2021) (holding appellant established ineffective assistance of counsel for failing to object to erroneous jury instruction; contrary to Commonwealth's argument, court did more than make one inaccurate statement; shortly after court gave erroneous instruction to which counsel failed to object, court gave second erroneous instruction; trial judge's purported correction of misstatement could only have served to prejudice appellant further).

Pennsylvania's Suggested Standard Criminal Jury Instruction as to the defendant's character in a criminal matter is as follows:

> The defense offered evidence tending to prove that the defendant is a person of good character. I am speaking of the defense witnesses who testified [that the defendant has a good reputation for being a law-abiding, peaceable, nonviolent individual] [that *[proof of good character]*].
>
> [The district attorney called witnesses who in effect denied that the defendant has a good reputation for *[character trait]*. You may use the Commonwealth's testimony for one purpose only. That is to help you judge whether the defense's character witnesses are really familiar with the defendant's reputation and whether in their testimony they gave you an accurate description of [his] [her] reputation.]
>
> The law recognizes that a person of good character is not likely to commit a crime that is contrary to that person's nature. Evidence of good character may by itself raise a reasonable doubt of guilt and require a verdict of not guilty.

- 17 -

You must weigh and consider the evidence of good character along with the other evidence in the case. If, on all the evidence, you have a reasonable doubt of the defendant's guilt, you must find [him] [her] not guilty. However, if, on all the evidence, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should find [him] [her] guilty.

Pa.SSJI (Crim) 3.06 (internal numbering omitted).

Pennsylvania's Suggested Standard Criminal Jury Instructions for "date of crime: proof of date alleged not essential" is as follows:

[The indictment alleges that the crime was committed on *[date]*.]

You are not bound by the date alleged in the [indictment] [information]. It is not an essential element of the crime charged. You may find the defendant guilty if you are satisfied beyond a reasonable doubt that [he] [she] committed the crime charged [in and around] [on or about] the date charged in the [indictment] [information] even though you are not satisfied that [he] [she] committed it on the particular date alleged in the [indictment] [information].

Pa.SSJI (Crim) 3.19.

The suggested jury instruction for impeachment with prior conviction of a witness is as follows:

You have heard evidence that one of the witnesses, *[name of witness]*, has been convicted of the crime of *[crime]*.

The only purpose for which you may consider this evidence of prior conviction is in deciding whether or not to believe all or part of *[name of witness]*'s testimony. In doing so, you may consider the type of crime committed, how long ago it was committed, and how it may affect the likelihood that *[name of witness]* has testified truthfully in this case.

Pa.SSJI (Crim) 4.08D (internal numbering omitted).

- 18 -

Instantly, the court instructed the jury on the concept of reasonable doubt as follows:

> The fundamental principle of our criminal justice system is that a person accused of a crime, the Defendant, is presumed to be innocent. The mere fact that he was arrested and accused of a crime is not any evidence against him. In addition, there is no inference of guilt created by the fact that there is an information or even a trial. Furthermore, the Defendant is presumed innocent throughout the trial unless and until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth has proved him guilty beyond a reasonable doubt.
>
> It is not the Defendant's burden of proof to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden to prove each and every one of the crimes charged. A person accused of a crime is not required to present evidence or to prove anything in his own defense. If the Commonwealth fails to meet his burden, then your verdict must be "not guilty." On the other hand, if the Commonwealth does not prove beyond a reasonable doubt that the Defendant is guilty, then your verdict—I'm sorry; if the Commonwealth does prove beyond a reasonable doubt that the Defendant is guilty, then your verdict should be "guilty."
>
> Although the Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably carefully and sensible person to pause or hesitate before acting in a matter of importance in his or her own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or the lack of evidence presented with respect to some element of the crime charged.
>
> A reasonable doubt must be a real doubt. It may not be an imagined one, nor may it be a doubt merely manufactured to avoid carrying out an unpleasant duty. **To summarize,**

- 19 -

**you may find the Defendant guilty based on the mere suspicion of guilt.** The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, the Defendant is no longer presumed to be innocent, and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find him not guilty.

(N.T. Trial, 7/29/13—Volume 5, at 425-27) (emphasis added).

The record confirms Appellant's assertion that the court stated, "you may find the Defendant guilty based on the mere suspicion of guilt." (**Id.** at 427). Although the court deviated from the suggested instruction by omitting the word "not," the instruction as given must be considered as a whole to determine whether it fairly conveyed the legal principles at issue. **See Reid, supra**. Despite the omission of "not," the court accurately described the concept of reasonable doubt prior to the complained-of statement. (**See** N.T. Trial at 425-27). The court described reasonable doubt as something that "would cause a … sensible person to pause or hesitate before acting in a matter of importance in his or her own affairs." (**Id.** at 427). The court elaborated by explaining that a reasonable doubt is a "real doubt," and that it cannot be "imagined" or "manufactured." (**Id.**)

The court ended the reasonable doubt instruction by succinctly stating, "[o]n the other hand, if the Commonwealth does not meet its burden, then you must find him not guilty." (**Id.**) Considering the court's accurate descriptions of the law both before and after the omission of the word "not," the court "accurately instructed the jury regarding the Commonwealth's duty

to prove Appellant guilty beyond a reasonable doubt" despite the "obviously inadvertent, misstatement." ***See Reid, supra*** at 434.

Regarding the jury instruction as to a defendant's character, the court instructed the jury as follows:

> The defense offered evidence tending to prove that the Defendant is a person of good character. I am speaking of the Defense witnesses who testified that the Defendant has a good reputation for being law-abiding. The law recognizes that a person of good character is not likely to commit a crime which is contrary to that person's nature. Evidence of good character may by itself raise a reasonable doubt of guilt and require a verdict of not guilty. You must weigh and consider the evidence of good character along with all of the other evidence in the case.

(N.T. Trial, 7/29/13—Volume 5, at 430-31).

Contrary to Appellant's assertion, the court provided the correct standard of proof when it said that evidence of good character may raise a reasonable doubt as to guilt. ***See*** Pa.SSJI (Crim) 3.06. Additionally, the transcript does not reveal that the instruction deviated from the suggested standard instruction. Finally, the court echoed the suggested instruction when it stated, "I am speaking of the Defense witnesses who testified that the Defendant has a good reputation for being law-abiding." (***Id.*** at 430). Thus, this instruction clearly, adequately, and accurately reflected the law. ***See Lesko, supra***. ***See also Smith, supra***.

Regarding the instruction for the date of the crime, the court stated, in relevant part, "[y]ou may find that the Defendant is guilty if you are satisfied that he committed the crimes charged in the indictment even though you are

not satisfied that he committed them on the particular date alleged in the indictment." (N.T. Trial, 7/29/13—Volume 5, at 431-32). Although the court used its own wording, the instruction accurately conveyed that a defendant may be found guilty of the crimes charged even if the jury is uncertain about whether the crimes were committed on the date alleged in the charging instrument. *See* Pa.SSJI (Crim) 3.19.

Contrary to Appellant's final assertion regarding a lack of information about the witnesses' prior convictions, one of the victims, S.L., testified that he had a four-year-old prior conviction for felony burglary. (*See* N.T. Trial, 7/23/13—Volume 2, at 79). Another victim, D.J., testified that he had multiple prior convictions, including criminal trespass in 2004, theft in 2006, and bad checks in 2011. (*See* N.T. Trial, 7/24/13—Volume 3, at 186). Additionally, the subsequent instruction for impeachment with prior convictions was nearly verbatim to the suggested standard instruction. *See* Pa.SSJI (Crim) 4.08D.

Based upon the foregoing, we agree with the PCRA court's conclusion that the entire charge clearly and accurately represented the relevant legal concepts to the jury. *See Geathers, supra*. Consequently, there is no arguable merit to Appellant's challenge to the jury instructions, and he is not entitled to relief on his fourth claim. *See Smith, supra*.

In the fifth claim, Appellant argues that he was illegally designated as a sexually violent predator ("SVP"). Appellant asserts that the record lacks clear and convincing evidence that Appellant is likely to reoffend. Appellant insists

that he has not had any accusations of sexual abuse or criminal activity lodged against him since the original sentencing hearing in this case, which indicates that he is not likely to reoffend. Appellant concludes that prior counsel were ineffective for failing to litigate or object to Appellant's SVP designation. We disagree.

Challenges to the sufficiency of the evidence supporting a trial court's SVP designation are governed by the following principles:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa.Super. 2015), *appeal denied*, 633 Pa. 763, 125 A.3d 1199 (2015) (quoting *Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa.Super. 2011)). "SVP" is defined as:

> A person who has been convicted of a sexually violent offense … and who is determined to be a sexually violent predator … due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from congenital or acquired condition … that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was

- 23 -

predatory. Predatory conduct is defined as an act directed at a stranger or at a person with whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization. Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an "independent element."

**Commonwealth v. Leatherby**, 116 A.3d 73, 84-85 (Pa.Super. 2015)

(quoting **Commonwealth v. Stephens**, 74 A.3d 1034, 1038-39 (Pa.Super.

2013)).

Pennsylvania's Sexual Offenders Assessment Board ("SOAB") evaluators

must consider the following factors when performing SVP assessments:

(1)     Facts of the current offense, including:

(i)     Whether the offense involved multiple victims.

(ii)    Whether the individual exceeded the means necessary to achieve the offense.

(iii)   The nature of the sexual contact with the victim.

(iv)    Relationship of the individual to the victim.

(v)     Age of the victim.

(vi)    Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii)   The mental capacity of the victim.

(2)     Prior offense history, including:

- 24 -

(i)     The individual's prior criminal record.

(ii)     Whether the individual completed any prior sentences.

(iii)     Whether the individual participated in available programs for sexual offenders.

(3)     Characteristics of the individual, including:

(i)     Age of the individual.

(ii)     Use of illegal drugs by the individual.

(iii)     A mental illness, mental disability or mental abnormality.

(iv)     Behavioral characteristics that contribute to the individual's conduct.

(4)     Factors that are supported in sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.58(b).

Instantly, Appellant was found guilty of IDSI, which is a sexually violent offense.  *See* 42 Pa.C.S.A. §§ 9799.12, 9799.14.  In his testimony during the SVP hearing, Dr. Allan Pass, a SOAB examiner, addressed the factors set forth in Section 9799.58(b).   (*See* N.T. SVP Hearing, 10/22/13, at 5-12).  Regarding Appellant's mental abnormality, Dr. Pass testified that Appellant's "behavior in the commission of these offenses, the presence of mental abnormality or personality disorder as defined by the statute specifically identified as paraphilia not otherwise specified."  (*Id.* at 9).  Dr. Pass noted that this diagnosis means that an individual engaged in "sexual misconduct

behavior over a period of time of at least six months which has created concerns and conflict, social conflict, personal conflict, for himself." (***Id.*** at 10). Specific to Appellant, Dr. Pass stated that "we have an adult who is engaged in sexual misconduct with juvenile males over the course of approximately one year and six months." (***Id.***)

Dr. Pass observed that paraphilia is "chronic in nature, so, as a result, the likelihood of re-offending would be high." (***Id.***) Dr. Pass elaborated on Appellant's case as follows: "[Appellant] utilized his position of authority as a police officer over children at school to intimidate, control and sexually exploit them for his own personal sexually deviant gratification." (***Id.*** at 11). Appellant "did engage in acts with the victims with whom a relationship has been initiated … in order to support or facilitate the victimization." (***Id.***) Dr. Pass opined that "[Appellant] met the classification criteria as outlined within the statute for predatory conduct," and he reached this opinion to a reasonable degree of certainty within the accepted values in his field. (***Id.*** at 11-12). Relying on Dr. Pass's opinion, the trial court found that Appellant met the statutory definition of sexually violent predator. (***Id.*** at 23).

Here, Dr. Pass's testimony confirmed that Appellant suffers from a mental abnormality that makes him likely to re-offend. ***See Leatherby, supra***. Viewing this evidence in the light most favorable to the Commonwealth, the record reveals that there was clear and convincing evidence to support Appellant's classification as an SVP. ***See Hollingshead,***

*supra*. Therefore, the PCRA court correctly concluded that this issue was without arguable merit, and Appellant is not entitled to relief on this claim. *See Smith, supra*.

In Appellant's sixth claim, Appellant argues he was illegally sentenced under SORNA II. Appellant asserts that his sentencing resulted in a violation of his due process rights and an *ex post facto* violation. Appellant insists that SORNA II was applied retroactively and that it increased the authorized punitive measures, thereby creating an *ex post facto* violation. For these reasons, Appellant concludes all prior counsel were ineffective for failing to challenge the legality of the sentence under SORNA II.[6] We disagree.

In *Commonwealth v. Muniz*, 640 Pa. 699, 164 A.3d 1189 (2017) (plurality), *cert. denied*, ___ U.S. ___, 138 S.Ct. 925, 200 L.Ed.2d 313 (2018), our Supreme Court held that the registration provisions of SORNA I were punitive, such that application of those provisions to offenders who committed their crimes prior to SORNA I's effective date violated *ex post facto* principles. Following *Muniz* and *Commonwealth v. Butler*, 173 A.3d 1212 (Pa.Super.

---

[6] Appellant baldly asserts a separate claim when he states, "Section 9799.63 violates his constitutional right to reputation protected under Article I, Section 11 of the Pennsylvania Constitution." (Appellant's Brief at 40). This single sentence, however, does not adequately develop an argument advancing Appellant's "right to reputation" claim.

2017) ("***Butler I***"), *rev'd*, ___ Pa. ___, 226 A.3d 972 (2020) ("***Butler II***"),[7]

the Pennsylvania General Assembly enacted legislation to amend SORNA I.

***See*** Act of Feb. 21, 2018, P.L. 27, No. 10 ("Act 10").  Act 10 amended several

provisions of SORNA I and added several new sections found at 42 Pa.C.S.A.

§§ 9799.42, 9799.51-9799.75.  In addition, the Governor of Pennsylvania

signed new legislation striking the Act 10 amendments and reenacting several

SORNA I provisions, effective June 12, 2018.  ***See*** Act of June 12, 2018, P.L.

1952, No. 29 ("Act 29").  Through Act 10, as amended in Act 29 (collectively,

"SORNA II"), the General Assembly split SORNA I's former Subchapter H into

a Revised Subchapter H and Subchapter I.

Subchapter I addresses sexual offenders who committed an offense on

---

[7] In ***Butler I***, this Court held that the provision of SORNA I requiring a court to designate a defendant a SVP by clear and convincing evidence violates the federal and state constitutions because it increases a defendant's criminal penalty without the factfinder making necessary factual findings beyond a reasonable doubt.  ***See Butler I, supra***.  However, the Pennsylvania Supreme Court reversed ***Butler I***.  ***See Butler II, supra*** (holding SVPs are different from non-SVP SORNA registrants at issue in ***Muniz*** due to heightened public safety concerns based on determination that SVPs have mental abnormality or personality disorder that makes individual likely to engage in predatory sexual violent offenses; procedure for designating individuals as SVPs is not subject to requirements of ***Apprendi*** and ***Alleyne*** and remains constitutionally permissible).  ***See also Apprendi v. New Jersey***, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding any facts, other than fact of prior conviction, that subject defendant to additional penalty beyond statutory maximum must be submitted to jury and proven beyond reasonable doubt) and ***Alleyne v. United States***, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (holding any fact that increases mandatory minimum sentence for crime is fact that must be submitted to jury and found beyond reasonable doubt).

or after April 22, 1996, but before December 20, 2012; or those who were required to register under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired. ***See*** 42 Pa.C.S.A. § 9799.52. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. ***See*** 42 Pa.C.S.A. §§ 9799.10-9799.42.

In ***Commonwealth v. Lacombe***, 660 Pa. 568, 234 A.3d 602 (2020), the Pennsylvania Supreme Court held that Subchapter I of SORNA II is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws. ***See id.*** at 609, 234 A.3d at 626-27. ***See also Commonwealth v. Elliott***, 249 A.3d 1190, 1194 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 263 A.3d 241 (2021) (rejecting *ex post facto* challenge to lifetime registration for rape conviction where appellant was subject to Subchapter I reporting requirements).

Instantly, Appellant committed his sex offenses between 1998 and 1999, and he is subject to registration and reporting requirements under Subchapter I. ***See*** 42 Pa.C.S.A. § 9799.52. Subchapter I requires Appellant to report for life based on his IDSI conviction. ***See*** 42 Pa.C.S.A. § 9799.55(b)(2)(i)(A). Under ***Lacombe*** and its progeny, Appellant's *ex post facto* challenge fails. ***See Lacombe, supra***; ***Elliott, supra***. Based upon the foregoing, this claim is without arguable merit, and the PCRA court properly

denied relief. ***See Smith, supra***.

In his final issue, Appellant references his previous arguments and insists that the PCRA court should have granted relief under a theory of "cumulative ineffective assistance." Appellant also raises several "sub-claims," ostensibly to support his argument that all prior counsel were ineffective on multiple bases, thereby permitting this Court to assess the cumulative impact. Based upon this cumulative impact, Appellant concludes that this Court must vacate all of his sentences and order a new trial. We disagree.

Preliminarily, matters that are not raised in the Rule 1925(b) concise statement of errors complained of are waived on appeal. ***Commonwealth v. Dowling***, 778 A.2d 683, 686 (Pa.Super. 2001). Moreover, "[t]he failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa.Super. 2015). Finally, "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. When the failure of individual claims is based upon a lack of prejudice, however, then the cumulative prejudice from those claims may properly be assessed." ***Commonwealth v. Elliott***, 622 Pa. 236, 294, 80 A.3d 415, 450 (2013), *cert. denied*, 574 U.S. 828, 135 S.Ct. 50, 190 L.Ed.2d 54 (2014) (internal citations omitted).

Here, Appellant failed to raise his "sub-claims" in his Rule 1925(b)

statement, and those arguments can be waived on this basis alone. *See Dowling, supra*. Further, with respect to these "sub-claims," the argument section of Appellant's brief focuses on the arguable merit prong of the test for ineffective assistance while providing mere cursory analysis of the rational basis and prejudice prongs. Thus, the failure of the "sub-claims" to develop a meaningful argument for all three parts of the test for ineffectiveness provides an additional basis for waiver. *See Freeman, supra*. To the extent Appellant also seeks to assert a claim of cumulative prejudice, here, we have not rejected the aforementioned claims of ineffectiveness based upon the prejudice prong of the test for ineffectiveness. Thus, there can be no aggregation of prejudice from multiple ineffectiveness claims, and Appellant's claim fails. *See Elliott, supra*. Accordingly, we affirm the PCRA court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2022

- 31 -